UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: BP p.l.c. SECURITIES LITIGATION | § § § | MDL No. 10-md-2185 |
| Robert R. Glenn, | § § | Civil Action No. 13-cv-3660 |
| Plaintiff, v. | § § § | HON. KEITH P. ELLISON |
| BP p.l.c. | § § § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Plaintiff Robert R. Glenn, a resident of the state of Oregon, brings this putative class action lawsuit against Defendant BP p.l.c. ("BP" or the "Company"), alleging that it wrongfully cancelled a previously declared dividend following the Deepwater Horizon disaster. This is the second such lawsuit brought by Mr. Glenn; the Court twice dismissed his first lawsuit, filed in Oregon, for lack of personal jurisdiction over BP.[1] Mr. Glenn has filed this lawsuit in New York, where personal jurisdiction is not contested. Nonetheless, the Court finds it must again dismiss Mr. Glenn's claims, this time pursuant to the doctrine of forum non conveniens. To the extent that Mr. Glenn and his fellow shareholders have rights to vindicate, they must look to English courts for relief. The Court therefore **GRANTS** Defendant's Motion to Dismiss the Class Action Complaint (Doc. No. 11).

### I.  FACTUAL AND LEGAL ALLEGATIONS

BP p.l.c. is a public company organized under the laws of England and Wales and headquartered in London, England. (Doc. No. 1 ("Compl."), at ¶ 14.) Mr. Glenn seeks to

---

[1] *See* Civil Action No. 11-cv-2941 (terminated June 6, 2013).

represent a proposed class of all record holders of BP American Depositary Shares ("ADSs") as of May 7, 2010. (*Id.* at ¶ 1.)

Mr. Glenn's claims stem from the unusual trajectory of a dividend approved by the BP Board of Directors immediately following the Deepwater Horizon catastrophe. The Deepwater Horizon rig exploded on April 20, 2010. (Compl. ¶ 4.) On April 27, 2010, in the regular course of business, BP announced that its Board of Directors had declared a quarterly dividend for the first quarter of 2010 in the amount of $0.84 per ADS, payable on June 21, 2010, to its ADS shareholders of record as of May 7, 2010. (*Id.* at ¶ 2.) The total value of the dividends to the record date ADS shareholders was approximately $750 million. (*Id.*) Mr. Glenn claims that the declaration of this dividend created a binding obligation on the part of BP—i.e., a legal "debt owed" by BP to the May 7, 2010 ADS shareholders. (*Id.* at ¶ 3.)

Between the declaration of the dividend and the date payment was due, BP took several actions that, according to Plaintiff, served as assurances to shareholders of the Company's continued intent to pay the dividend. (Compl. ¶ 5.) As it made these assurances, BP simultaneously engaged in a political tug-of-war with the Obama Administration and the U.S. Congress. (*Id.* at ¶ 7.) According to Plaintiff, BP ultimately lost this political battle. On June 16, 2010, after a meeting with President Obama, BP announced that its Board of Directors had cancelled the previously declared first quarter dividend. (*Id.* at ¶ 8.) BP stated that it decided to cancel the dividend "despite its 'strong financial position' and 'deep asset base.'" (*Id.*)

Mr. Glenn contends that applicable law, as well as BP's Articles of Association, did not allow BP to cancel the properly declared dividend, regardless of any political pressure or public relations concerns the Company was facing. The Complaint alleges that the cancellation of the quarterly dividend put BP in breach of its legal obligation to shareholders. (Compl. ¶¶ 123-26.)

Plaintiff thus seeks to recover the unpaid dividend retained by BP. He asserts claims under the following legal theories: (1) assumpsit; (2) money had and received; (3) unjust enrichment; and (4) breach of contract. (*Id*. ¶¶ 127-52.)

## II. MOTION TO DISMISS

BP raises two grounds for dismissal of Mr. Glenn's claims under Federal Rule of Civil Procedure 12(b)(6). First, pursuant to the doctrine of forum non conveniens, BP urges dismissal in favor of England as a more convenient forum. (Doc. No. 12 ("Mot."), at 7-13.) Second, BP argues that under the governing law—that of England and Wales (which the parties refer to as English law)—BP's Board had authority to cancel an *interim* dividend at any time prior to payment, and its decision to do so in June 2010 did not cause the Company to incur any liability to its disappointed shareholders. (*Id*. at 14-24.) Because the Court decides the motion on the basis of forum non conveniens, it does not engage the substantive merits of Mr. Glenn's claims under English law.

## III. FORUM NON CONVENIENS LEGAL STANDARD

Under the doctrine of forum non conveniens, the Court may decline to exercise jurisdiction "if the moving party establishes that the convenience of the parties and the court and the interests of justice indicate that the case should be tried in another forum." *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001). "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

Analysis of a motion to dismiss for forum non conveniens proceeds in three stages. First, the Court "determines the degree of deference properly accorded the plaintiff's choice of forum." *Norex Petro. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005). Second, it decides

3

whether an available and adequate alternative forum exists. *Id*. Third, it determines which forum is best suited to the litigation. *Id*.

The final prong of the analysis begins with a consideration of "relevant factors of private interest." *In re Air Crash Disaster Near New Orleans, La., on July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). The private interest factors to be considered by the Court relate primarily to the convenience of the litigants. They are:

    (1)    relative ease of access to sources of proof;

    (2)    availability of compulsory process to secure the attendance of unwilling witnesses;

    (3)    cost of attendance for willing witnesses; and

    (4)    all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

If the private interest factors weigh in favor of dismissal, the motion to dismiss for forum non conveniens may be granted. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.*, 955 F.2d 368, 376 (5th Cir. 1992) (finding "no need to consider the public interest factors" when the "balance of private interest factors favor[ed] dismissal"). Otherwise, the Court must consider in turn the relevant public interest factors. "If these factors weigh in the moving party's favor, the district court may dismiss the case." *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002) (citing *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 837 (5th Cir. 1993)); *see also In re Air Crash*, 821 F.2d at 1165 ("If the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors.").

The public interest factors relevant to the analysis are:

(1) administrative difficulties flowing from court congestion;

(2) local interest in having localized controversies decided at home;

(3) familiarity of the forum with the law that will govern the case;

(4) avoidance of unnecessary problems of conflict of laws or the application of foreign law; and

(5) unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241 n.6. In cases where the private interest factors do not weigh heavily in favor of the alternative forum, a court may still dismiss an action in light of the relevant public interest considerations. *See In re Air Crash*, 821 F.2d at 1165-66 ("[E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained.") (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 792 (D.C. Cir. 1980)).

When undertaking the required balancing, "no one private or public interest factor should be given conclusive weight[.]" *In re Air Crash*, 821 F.2d at 1163. Ordinarily a favorable presumption is applied to the plaintiff's choice of forum. Thus, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991) (forum non conveniens dismissal only appropriate if "considering the relevant private and public interest factors . . . the balance of convenience tilts strongly in favor of trial in the foreign forum").

## IV. ANALYSIS

The typical analysis under forum non conveniens requires evaluating (1) how much deference to accord Mr. Glenn's choice of forum; (2) whether an adequate alternative forum exists; and (3) whether the balance of private and public interest factors weighs in favor of dismissing the action for a more convenient forum. *Norex Petro.*, 416 F.3d at 153. In this case, the analysis is truncated because Plaintiff agrees, in reliance on certain representations made by BP, that "England satisfies the requirements for an adequate alternative forum." (Doc. No. 16 ("Opp."), at 10.)

As it has administered the multidistrict litigation docket of which this case is part, the Court has become exceedingly familiar with the argument that England is a more convenient forum for various claims asserted on behalf of and against BP. Specifically, the Court has once granted and once denied a motion to dismiss brought by BP or related defendants on the basis of forum non conveniens. *See In re BP Shareholder Deriv. Litig.*, 2011 WL 4345209 (S.D. Tex. Sept. 15, 2011); *Alameda Cnty. Employees' Retirement Ass'n*, 2013 WL 6383968 (S.D. Tex. Dec. 5, 2013). To put Mr. Glenn's case in perspective, the Court will periodically refer to its prior rulings in these associated actions.

### A.     Mr. Glenn's choice of forum is entitled to deference.

Before evaluating the various private and public interest factors, it is necessary to determine the amount of deference to accord Mr. Glenn on his choice of forum. BP argues that Mr. Glenn is entitled to little deference because (1) he is not suing in his home forum and (2) he is suing on behalf of very large class of shareholders, rendering his choice of forum no more "convenient" than any other forum where a class member is found. (Mot. at 9.) BP's second argument is reminiscent of one pursued by defendants in a related shareholder derivative action

asserted on behalf of BP. In that case, the Court accorded very little weight to the plaintiffs' choice of forum because they were "phantom" plaintiffs, bringing suit on behalf of the corporation and asserting no particularized interests of their own. *See In re BP Shareholder Deriv. Litig.*, 2011 WL 4345209, at *5.

The Court cannot agree that Mr. Glenn's choice of forum is entitled to little deference. First, as Mr. Glenn points out, several cases stand for the proposition that, when the alternative forum is a foreign country, the "home" district for an American plaintiff is any U.S. federal district court. *See Adelson v. Hananel*, 510 F.3d 43, 53 (1st Cir. 2007); *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 (2d Cir. 2000); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394 (8th Cir. 1991). BP posits that these cases are no longer good law. (Doc. No. 21 ("Reply"), at 4 n.2.) Even if BP is correct, Mr. Glenn attempted to sue in his "home" forum of Oregon and was deprived of his choice by the fact that BP is not amenable to personal jurisdiction there. Thus, the Court agrees with Mr. Glenn that it would be antithetical to the spirit of forum non conveniens to now discount his choice of forum as opportunistic "forum shopping." *See Iragorri v. United Techs.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (adopting a sliding scale of deference based on the extent to which "it appears that [the plaintiff's] choice of forum has been dictated by reasons that the law recognizes as valid").

Moreover, BP's second argument—that Mr. Glenn's choice of forum is worth little deference because he is suing on behalf of a class—works against it. The parties disagree about whether the legal reasoning which justifies discounting a plaintiff's choice of forum in a shareholder derivative suit—as set forth in *Koster v. (American) Lumbermens Mutual Casualty Company*, 330 U.S. 518 (1947)—is equally applicable to any class action lawsuit. Case law does not clearly resolve the dispute. But even if BP is correct, and *Koster* is equally applicable to any

class action, this does not justify ignoring the characteristics of the class on behalf of which Mr. Glenn has sued. The relevant class is defined as all ADS shareholders as of May 7, 2010. Mr. Glenn contends—and BP does not dispute—that the members of this defined class are predominantly American. Therefore, even accepting BP's premise that Mr. Glenn is a "shadow" plaintiff who can be disregarded, the class he represents has a "home" forum—any U.S. federal district court—entitled to "substantial deference" in forum non conveniens analysis. The practical effect of this deference is that "unless the balance [of private and public interest factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508.

### B. The private interest factors weigh slightly in favor of dismissal.

In determining whether private interest factors weigh in favor of dismissal, the Court must consider: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of the unwilling; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil*, 330 U.S. at 508.

#### 1. Location of evidence

BP argues that all of the relevant evidence for this lawsuit is found in England, where its corporate records are housed. (Mot. at 10.) Plaintiff concedes that almost all, if not all, of BP's relevant documents will be found in England. However, he argues that this fact should be accorded minimal weight because BP does not represent that producing the records in the U.S. will be "oppressive" or "vexatious." (Opp. at 10.) Plaintiff also claims that relevant nonparty documents will be found in the United States, making it a more convenient forum when it comes to the location of evidence. The only documents specifically noted in this category, however, are:

(1) BP's listing agreements with the NYSE; (2) other documents regarding BP's knowledge of and compliance with NYSE rules; and (3) documents maintained by JPMorgan Chase Bank NA in its role as "Depository" under the Deposit Agreement. (*Id.* at 10-11.) Plaintiff provides no explanation of how such nonparty documents will factor into the question of BP's liability on his claims, and the Court remain skeptical that they will play any significant role.

To put this factor in perspective, the Court found in the shareholder derivative suit that the lion's share of the evidence regarding the actions of the BP board would be found in England, but that the advent of sophisticated electronic discovery minimized the importance of this factor in the overall analysis. Therefore, the Court held that the location of evidence tipped the scale only slightly to England as the more convenient forum. *See In re BP Shareholder Litig.*, 2011 WL 4345209, at \*8. The reasoning is equally applicable in the current circumstances. Most of the relevant evidence concerns the actions of BP's Board; this evidence will be found in England, which slightly tips the scale in favor of an English forum.

### 2. Location of witnesses

BP contends—and Plaintiff does not dispute—that the most relevant witnesses in this action are the BP directors and other individuals present at the April 15, 2010 Board meeting at which the Board delegated authority to the Results Committee to finalize the amount of the first quarter dividend; and the BP directors and other individuals present at the April 26, 2010 Results Committee meeting at which the amount of the first quarter dividend was decided. (Mot. at 5, 11; Opp. at 11-14.) This rubric produces a universe of 22 potential witnesses:

| Name | Capacity | Meeting attended | Current residence | Still w/ BP Board? | Other U.S. litigation? |
|---|---|---|---|---|---|
| P.M. Anderson[2] | Director | 4/15/10 | U.S.[3] | Yes[3] | |
| Rupert Bondy | Non-director | 4/15/10 | U.K. | n/a | |
| Antony Burgmans | Director | 4/15/10 | Netherlands[3] | Yes | |
| Cynthia Carroll | Director | 4/15/10 | Unknown (not U.S.)[4] | Yes | |
| William Castell | Director | 4/15/10 | U.K. | No | Yes[5] |
| Iain Conn | Director | 4/15/10 | Unknown (not U.S.) | Yes | |
| George David | Director | 4/15/10 | U.S. (New York) | Yes[3] | |
| E.B. Davis, Jr. | Director | 4/15/10 | U.S.[5] | No[5] | |
| Ian Davis | Director | 4/15/10 | Unknown (not U.S.) | Yes | |
| Robert Dudley | Director | 4/15/10 | U.S.[3] | Yes[3] | |
| Douglas Flint | Director | 4/15/10 | U.K. | No | Yes[5] |
| Byron Grote | Director | 4/15/10 4/26/10 | U.K.[6] | No | Yes[5] |
| Roger Harrington | Non-director | 4/26/10 | U.K. | n/a | |
| Anthony Hayward | Director | 4/15/10 | U.K. | No | Yes[5] |
| Andrew Inglis | Director | 4/15/10 | U.S.[5] | No[5] | |
| David Jackson | Company Secretary | 4/15/10 4/26/10 | U.K. | n/a | |
| DeAnne Julius | Director | 4/15/10 | U.K. | No | Yes[5] |
| David Pearl | Non-director | 4/15/10 4/26/10 | U.K. | n/a | |
| Charles Proctor | Non-director | 4/15/10 | U.K. | n/a | |
| Ian Prosser | Director | 4/15/10 | U.K. | No | Yes[5] |
| Carl-Henric Svanberg | Director | 4/15/10 4/26/10 | Sweden[3] | Yes | |
| Alistair Wilson | Non-director | 4/26/10 | U.K. | n/a | |

---

[2] Unless otherwise indicated, the information in this chart is drawn from the Declaration of David. J. Jackson, Company Secretary of BP p.l.c. since 2003. (Doc. No. 12-15.)

[3] (Opp. at 11.)

[4] According to Plaintiff, Ms. Carroll is a U.S. citizen who owns property in the U.S. Plaintiff does not contend that she resides in the U.S., however. (Opp. at 12.)

[5] (Opp. at 12.)

[6] According to Plaintiff, Mr. Grote is a U.S. citizen who owns property in the U.S. Plaintiff does not contend that he resides in the U.S., however. (Opp. at 12.)

The location of witnesses is relevant in two ways. First, there is the issue of whether potentially unwilling witnesses can be compelled to participate in discovery and any trial which may occur. For this facet of the inquiry, Plaintiff argues—and the Court agrees—that the residence of current BP directors is not a concern, as BP will be able to secure their participation. This leaves the eight individuals who are no longer associated with BP's board: Mr. Castell, Mr. Davis, Mr. Flint, Mr. Hayward, Mr. Inglis, Ms. Julius, Mr. Prosser and Mr. Wilson. Two of these individuals—Mr. Davis and Mr. Inglis—are U.S. residents. The other six reside in the U.K. But the forum advocated by the Defendants is England, and Defendants have provided no information regarding the ability of the courts of England and Wales to compel the presence of unwilling individuals who reside in Scotland or Northern Ireland. In the absence of such information, the Court cannot find that the availability of compulsory process over unwilling witnesses favors an English forum over an American one. *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007) ("The defendants bear the burden of proof on all elements of the forum non conveniens analysis.").

A secondary concern is the cost to the parties of producing the relevant witnesses for discovery and trial. In the universe of twenty-two potential witnesses, five are residents of the U.S.; eleven are residents of the U.K.[7]; one is a resident of the Netherlands; and one is a resident of Sweden. By comparison, only five witnesses reside in the U.S., and only one of those—Mr. David—lives in New York, Mr. Glenn's chosen American forum. Plaintiff points out that BP is a large corporate defendant with ample access to resources, making this factor less important in the

---

[7] Plaintiff faults BP for not specifying where in the U.K. various individuals live, stating that "BP identifies no potential witness as a resident of England, BP's preferred forum." (Opp. at 11.) Although creative, the argument fails to persuade in this context. BP's position regarding the relative inconvenience of Mr. Glenn's chosen forum retains force even if the relevant witnesses reside in Scotland, Wales, or Northern Ireland rather than England.

11

overall analysis. (Opp. at 13.) Although the Court is sympathetic to the idea that BP can more easily bear the expenses and inconvenience of far-flung litigation, the factor is nonetheless relevant and weighs solidly in BP's favor.

### 3. Availability of class action format

Plaintiff suggests that the class action format is not available in England, and that the Court should take its unavailability into account because it is a "practical problem[] that make[s] trial of [the] case easy, expeditious and inexpensive." (Opp. at 14 (quoting *Gulf Oil*, 330 U.S. at 508).) BP counters that Mr. Glenn has misstated the law, offering testimony from its English law expert that Plaintiff's claims "could be brought by way of class action in the English Courts." (Reply at 8; Doc. No. 21-2, at ¶¶ 39-44.)

At least one other court has acknowledged limitations on the use of class-based and representative lawsuits in England in its forum non conveniens analysis. *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 482, 488-89 (S.D.N.Y. 2006) (accepting representation that "contingent fees" and "class actions" are "procedural devices not available in England" and weighing it as part of the private factors analysis). As that court found, however, the factor is not particularly weighty if all other factors "overwhelmingly favor dismissal." *Id*. at 489.

### 4. Private factors summary

At least in terms of the weighing of the various private interest factors, this lawsuit shares many similarities with the shareholder derivative action. As in that case, the private interest factors weigh in favor of an English forum, but not so strongly as to disturb Mr. Glenn's choice of forum. Therefore, the Court will consider the balance of the public interest factors.

      **C.      The public interest factors weigh strongly in favor of dismissal.**

The relevant public interest factors include: (1) congestion in the Court, (2) local interest in the lawsuit, (3) the burden on local juries, and (4) the Court's familiarity with governing law. *Gulf Oil*, 330 U.S. at 508.

            **1.      Localized interest in the controversy and burden on local resources**

To argue that New York has no localized interest in Plaintiff's claims, BP focuses on the fact that none of the relevant conduct occurred in New York; that Mr. Glenn is not even a resident of New York; and that class members' presence in New York is inconsequential because "BP shareholders are scattered throughout the world." (Mot. at 13.) BP emphasizes that all of the relevant conduct at issue in Plaintiff's claims "occurred in England, where BP is incorporated and headquartered." (*Id.*) Plaintiff responds that the U.S. and New York have "substantial interests" because his claims are "to recover on a debt denominated in U.S. dollars" and "arise under New York state law as a result of Plaintiff's ownership of federally-registered BP ADS shares purchased on a New York-based stock exchange using U.S. currency." (Opp. at 16.) He cautions that these interests are a direct result of BP's conscious decision to "[seek] out the capital markets of the United States, including New York." (*Id.*)

As the Court sees it, the issue posed by this public interest factor is which locality is interested in the dispute, *beyond* the interests of the parties themselves. It is difficult to imagine that this particular lawsuit will capture much local interest either in the U.S. or in England. To the extent that Mr. Glenn relies upon BP's decision to exploit the U.S. capital markets, suggesting that it imbues New York with a special interest in BP's corporate governance, the same argument can be made about any locality with a stock exchange listing BP's securities. The

13

Court does not find such an interest to be particularly strong *or* localized.[8] On the other hand, Mr. Glenn's claims directly implicate the rights and obligations of an English corporation under English law, and thus have the potential to affect the actions of other English entities. *See Gilstrap*, 443 F. Supp. 2d at 489 ("The matters at issue here are, in large part, those of 'internal corporate governance' of English companies, in which English courts would have a much greater local interest than the citizens of [the Southern District of New York]."). To the extent that this factor weighs either direction, it favors an English forum.

Relatedly, the Court may consider the extent to which the lawsuit unfairly burdens local resources. When there is much localized interest in the controversy, even a significant burden is tolerable. But in the absence of localized interest, it is difficult to justify imposing significant favcosts on the community to provide a forum for claims unrelated to the locality. *See Gulf Oil*, 330 U.S. at 508-09 ("Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation."). As Mr. Glenn acknowledges, the only tangible relations between Mr. Glenn's claims and the Southern District of New York is the fact that the NYSE and the Depository are found there. (Opp. at 15.) Mr. Glenn claims that these relations are "substantial." (*Id.*) The Court disagrees. Given the tenor of Mr. Glenn's claims—that an English corporation failed to abide by its obligations under English law, and as a result harmed shareholders across the globe—the Court finds that it would be inequitable to burden the citizens of New York with the task of adjudicating his rights.

---

[8] *But see DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 31-33 (2d Cir. 2002) (describing a "strong public interest" in permitting U.S. investors who purchase securities on U.S.-based stock exchanges to sue for securities fraud in U.S. courts).

### 2. Congestion in the forum court

In the *Alameda County* lawsuit, the Court noted that forum non conveniens dismissal would do little to alleviate congestion on the multidistrict litigation docket, because it was one of many securities fraud lawsuits which had been filed under both federal and state law and which involved common questions of law or fact. *See* 2013 WL 6383968, at *55. The opposite conclusion must be reached here. Mr. Glenn's claims are unique among the various cases in this multidistrict litigation docket. Dismissing his lawsuit in favor of an English forum will have an immediate and positive effect on the Court's workload.

### 3. Need to apply foreign law

BP leans heavily on this factor, arguing that the need to apply English favor strongly favors dismissal for an English forum. BP claims that Plaintiff's claims are based on a "novel proposition of English law" and that "[i]f any court is going to depart from settled English law and hold than an English board can declare final dividends that bind the company and cannot be revisited prior to payment, it should be an English court." (Mot. at 13.) Plaintiff responds that it would be error for the Court to dismiss his lawsuit simply because the case required the application of foreign law. (Opp. at 17-18.) Plaintiff also notes that English law—due to its shared common law tradition—is particularly amenable to application in American courts. (*Id.* at 18.) Finally, Plaintiff suggests that not all issues in the case involve English law, and that the Court will also need to apply New York law due to a choice-of-law provision in the ADS Deposit Agreement. (*Id.* at 16-17.)

Plaintiff is correct that it would be error to rely solely on this factor, to the exclusion of all else, when deciding whether to dismiss for forum non conveniens. And as demonstrated by its decision *not* to dismiss the plaintiffs' English common law claims in *Alameda County*, the Court

will shoulder the burden of administering English law when appropriate. Nonetheless, the need to apply foreign law is a very important factor in the forum non conveniens analysis. Courts "should be more hesitant to engage in [applying the laws of other nations] when doing so would necessarily involve expanding, extending, or departing from well-settled and long established principles of foreign law." *Gilstrap*, 443 F. Supp. 2d at 491. The Court has performed a preliminary review of the merits of Mr. Glenn's claims and has determined that the weight of English authority appears to be *against* him. Thus, it appears to the Court—at least at this early stage—that Mr. Glenn is seeking to test the outer limits of English law. Such an exercise is much better attempted in front of a tribunal deeply ensconced in the relevant law.

The Court is also skeptical of Mr. Glenn's claim that New York law will factor significantly in the case. Both parties have expended considerable time and resources to procure thorough affidavits from English law experts on the merits of Plaintiff's claims. It is unlikely that the parties would have gone through those motions unless they were confident that English law would determine the outcome of Plaintiff's claims. As a result, the Court concludes that the need to apply English law weighs strongly in favor of an English forum, although not as strongly as in the case of the shareholder derivative action.[9]

---

[9] In the shareholder derivative case, a recently enacted statute had replaced the English common law regarding the duties of corporate officers to the corporation, and very few decisions had been issued interpreting the statute. Based on the lack of guidance from English courts, the Court found that the need to apply foreign law weighed "heavily in favor of England." *In re BP Shareholder Deriv. Litig.*, 2011 WL 4345209, at *14. By contrast, in this case, the parties' experts generally agree as to what authority is applicable—although they disagree about how to apply it—and there is much of it from which to draw.

### 4. Public factors summary

As the above discussion makes clear, all of the relevant public factors weigh in favor of an English forum. But dismissal forum non conveniens is inappropriate, given the deference afforded to Mr. Glenn's choice of forum, unless the balance weighs *strongly* in favor of the alternate forum. *Gulf Oil*, 330 U.S. at 508. Each public factor above, taken alone, would be insufficient to surmount this hurdle. Taken together, however, the answer is clear; Mr. Glenn must seek relief in the English courts.

## V. CONCLUSION

For the reasons cited above, the balance of public interest factors weighs strongly in favor of England as an available, adequate, and more convenient forum for Mr. Glenn's claims. Defendant's Motion to Dismiss the Class Action Complaint (Doc. No. 11) is therefore **GRANTED**. This Court may reassert jurisdiction upon timely notification that the courts of England refuse to accept jurisdiction for reasons other than Mr. Glenn's failure to comply with the procedural requirements of English courts. The Court retains jurisdiction to supervise the terms of this dismissal.

**SIGNED** at Houston, Texas, on this the eighteenth day of June, 2014.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE